**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **JAHVID ALEXANDER and JESTUS FRANCIS,** <br><br> **Defendants.** | **Case No. 3:20-cr-0026** |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**YASIR SADAT, ASSISTANT UNITED STATES ATTORNEY**
United States Attorney's Office
St. Thomas, U.S.V.I.
*For the United States of America,*

**MATTHEW A. CAMPBELL, FEDERAL PUBLIC DEFENDER**
**Office of the Federal Public Defender**
St. Thomas, U.S.V.I.,
*For Defendant Jahvid Alexander,*

**ADAM G. CHRISTIAN, ESQ.**
Ogletree Deakins Law Firm
St. Thomas, U.S.V.I.
*For Defendant Jestus Lars Francis.*

**MEMORANDUM OPINION**

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendant Jahvid Alexander's ("Alexander") Motion to Dismiss for Speedy Trial Violations, or in the Alternative, Motion for Leave to File Motion to Dismiss for Speedy Trial Violations, filed on May 21, 2024. (ECF No. 128.) Defendant Jestus Francis ("Francis") joined in Alexander's motion to dismiss on May 24, 2024. (ECF No. 133.)[1]

[1] Notwithstanding filing a joinder in Alexander's motion to dismiss for speedy trial violation and the matter being fully briefed as of June 26, 2024, Francis filed a separate motion to dismiss based on a speedy trial violation on June 28, 2024. *See* ECF No. 148. Because the facts as to Alexander largely apply to Francis as well, the Court issues this Memorandum Opinion without the need for the matter in Francis' motion to be fully briefed.

The Government filed a timely response opposing the motion to dismiss on June 21, 2024. (ECF No. 146.) Alexander, thereafter, filed a reply on June 26, 2024. (ECF No. 147.) For the reasons stated below, the Court will grant the defendants' motion, in part, and deny, in part. The Court will grant the motion to the extent it seeks dismissal of the Indictment due to the Speedy Trial Act violation. However, the Court will deny the motion to the extent the defendants believe the violation warrants dismissal with prejudice. Additionally, the Court will also deny the defendants' request for dismissal with prejudice based on a violation of their constitutional right to a speedy trial.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 22, 2020, the United States (the "Government") filed an information charging defendant Alexander and his codefendant, Francis, with the following charges: (1) conspiracy to commit carjacking (18 U.S.C. § 371), (2) carjacking (18 U.S.C. § 2119), (3) brandishing a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)(1)(A)), (4) first-degree robbery (14 V.I.C. § 1862(2)), and (5) unauthorized possession of a firearm (14 V.I.C. § 2253(a)). (ECF No. 1). Francis was also charged with possession of marijuana with intent to distribute. *See id.* The next day, the Court set the case for trial on September 7, 2020. (ECF No. 12.) Shortly after the charges were filed, the Court also held detention hearings for the defendants wherein the Court ordered that Alexander be placed in pretrial detention while Francis was granted pretrial release. (ECF Nos. 22 and 30.)

On July 29, 2020, Francis filed a notice demanding a speedy trial. (ECF No. 24.) Several weeks later, on August 11, 2020, Alexander filed a motion for a speedy trial in anticipation of any potential Court order continuing the trial because of the COVID-19 pandemic. (ECF No. 41.)[2] At the time, Alexandar believed that holding a trial during the pandemic was feasible, and thus, a failure to do so would violate his right to a speedy trial. *See id.* Notwithstanding Alexander's motion, the Court determined that it was in the interest of justice and public health to continue the defendants' trial until January 11, 2021, due to the pandemic conditions in the Virgin Islands at the time. (ECF No. 47.)

[2] Alexander also filed a motion to exclude that same day. (ECF No. 40.)

On October 22, 2020, Alexander and Francis were charged by Indictment with the following charges: conspiracy to carjack, carjacking, brandishing a firearm in furtherance of the carjacking, two separate counts of first-degree robbery, and possession of a firearm during the commission of those robberies. (ECF No. 48.) In the same Indictment, Francis was also charged with possession of marijuana with intent to distribute. *See id.* On December 17, 2020, the Court continued the defendants' trial again due to the pandemic conditions in the Virgin Islands. This time until May 3, 2021. (ECF No. 63.)

On February 3, 2021, Alexander filed a motion to suppress purportedly stemming from a warrantless search of a vehicle on June 23, 2020. (ECF No. 67.) Francis filed a motion seeking to join in Alexander's suppression motion on February 12, 2021. (ECF No. 69.) After the parties completed their briefing on the issue, the Court scheduled an evidentiary hearing for August 12, 2021. (ECF No. 75.) In the same order, the Court also rescheduled the trial for October 4, 2021. *Id.*

In the interim, Alexander filed a motion to reconsider the Court's order of pretrial detention. (ECF No. 76.) On June 16, 2021, the Court vacated the order of detention and granted Alexander's pretrial release. (ECF No. 83.)[3]

On September 21, 2021, the Court again continued the suppression hearing and trial in the interest of justice due to the COVID-19 pandemic and the health concerns with holding in-person proceedings. (ECF No. 91.) The evidentiary hearing was continued until February 10, 2022, and the jury trial was continued until March 14, 2022. *See id.*

The evidentiary hearing finally commenced on February 10, 2022. Following the hearing, the Court ordered that the parties file supplemental briefs no later than February 24, 2022. (ECF No. 97.) Additionally, the Court ordered any responsive briefs be filed no later than March 3, 2022. *See id.* The Court then subsequently extended the deadline to file responsive briefs until March 8, 2022. (ECF No. 111.) In addition to extending the response deadline, on March 4, 2022, the Court also continued the date of trial to a date to be

[3] Therefore, by June 16, 2021, both Alexander and Francis were out on pretrial release. *See* ECF No. 30 and ECF No. 83.

determined in the future. (ECF No. 106.) Once the Court received all the supplemental briefing on March 8, 2022, the Court took the matter under advisement. (ECF No. 112.)

In the months following, the Court issued a series of general COVID-19 orders which excluded the time from March 8, 2022, to September 30, 2022, for the purposes of the Speedy Trial Act.[4] After the Court's August 31, 2022 general order excluding the time from September 1, 2022, to September 30, 2022, there were no subsequent COVID-19 orders excluding any additional time for the purposes of the defendants' speedy trial clock. By October 1, 2022, the Court had still not ruled on the motion to suppress. Consequently, notwithstanding the pending motion, the speedy trial clock had begun to run.

On September 29, 2023, Alexander filed a motion requesting a ruling on his motion to suppress. (ECF No. 120.) However, the motion to suppress remained pending until May 28, 2024. (ECF No. 138.)

On March 4, 2024, the Court scheduled this matter to proceed to trial on June 3, 2024. (ECF No. 124.) On May 21, 2024, Alexander filed the instant motion to dismiss the Indictment. In the motion, Alexander claims that outside of his motion requesting a ruling on the motion to suppress and the instant motion to dismiss, there has been no event that has excluded any meaningful amount of time under the speedy trial clock since September 30, 2022. As such, Alexander contends that by the date of the previously scheduled trial on June 3, 2024, 611 total days would have elapsed under the speedy trial clock. Since the only motions since October 1, 2022, that have taken more than a day to decide were the motion requesting a ruling and the instant motion to dismiss, Alexander is essentially arguing that more than 560 non-excludable days (or eighteen months) have elapsed under the speedy trial clock.

Given that 560 days greatly exceeds the 70 days permitted under the Speedy Trial Act, Alexander contends that not only is dismissal necessary but that dismissal with prejudice is the only appropriate remedy for the significant delays in this case.

---

[4] *See* District Court of the Virgin Islands, *General Orders*, https://www.vid.uscourts.gov/court-info/local-rules-and-orders/general-orders (last visited July 2, 2024).

On May 24, 2024, Alexander's co-defendant, Francis, filed a notice seeking to join Alexander's Motion to Dismiss for speedy trial violations. (ECF No. 133.) Francis' notice adopts all the arguments and authorities set forth by Alexander in his motion and adds several supplementary points as well. *See id.* In addition to adopting Alexander's arguments, Francis notes that he made a speedy trial demand on July 27, 2020, five days after the Government filed its original Information in this case. *See* ECF No. 133 at 1; ECF No. 24. Francis' notice also highlights that while he has been on pretrial release since July 29, 2020, his right to travel in and out of the U.S. Virgin Islands has now been restricted for over 1,395 consecutive days because of this case. *See* ECF No. 133 at 2.

## II. DISCUSSION

### A. Speedy Trial Act Violation

Pursuant to the Speedy Trial Act, a defendant must be tried within seventy days from the date of the filing of the information or indictment or from the date the defendant appears before an officer of the court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1). The Speedy Trial Act is unequivocal in its statutory mandate that "if a defendant is not brought to trial within the time limit required by section 3161(c), as extended by 3161(h), the information or indictment *shall* be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). In other words, if more than seventy non-excludable days have elapsed since the speedy trial clock began to run, the indictment *must* be dismissed. *See United States v. Williams*, 917 F.3d 195, 204 (3d Cir. 2019) ("Dismissal of an information or indictment is mandatory, rather than discretionary, upon a violation of the Speedy Trial Act."). In the instant case, a Speedy Trial Act violation has certainly occurred. As correctly outlined in the instant motion, outside of the motion requesting a ruling, the motions for pretrial release, and the instant motion itself, there is no basis under the Speedy Trial Act to exclude any additional time from October 1, 2022, to May 21, 2024. Accordingly, as of May 21, 2024—the date of Alexander's motion to dismiss—approximately 564 non-excludable days would have elapsed under the speedy trial clock.[5] Thus, there is no dispute

[5] There were 598 total days that elapsed from October 1, 2022, to May 21, 2024. Of those days, thirty days are excludable as a result of Alexander's motion requesting ruling. (ECF No. 120.) Two total days may be excluded for Alexander's motion to modify conditions of release filed on October 12, 2022, and Francis' fourth motion to

that the operative Indictment in this case must be dismissed in accordance with 18 U.S.C. § 3162(a)(2). *See id.* The only question remaining is whether the dismissal should be with or without prejudice.

Congress created no presumption in favor of either type of dismissal, but rather left the determination of the appropriate remedy to the sound discretion of the district courts. *See Zender v. United States*, 547 U.S. 489, 509 (2006) ("The sanction for a violation of the [Speedy Trial] Act is dismissal, but we leave it to the District Court to determine in the first instance whether dismissal should be with or without prejudice."). Although Congress provided the federal judiciary with discretion, Congress intended to focus the dismissal inquiry by requiring courts that find a Speedy Trial Act violation consider the following three factors when deciding whether to dismiss the charges with or without prejudice: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18. U.S.C. § 3162(a)(2); *see also United States v. Taylor*, 487 U.S. 326, 333 (1988) (noting that "courts are not free simply to exercise their equitable powers in fashioning an appropriate remedy, but in order to proceed under the [Speedy Trial] Act, must consider at least the three specified factors.").

In addition to the three enumerated factors listed in the statute, the Supreme Court has also noted that implicit in the dismissal analysis is consideration of the presence or absence of prejudice the defendant may have suffered as a result of the delay. *See Taylor*, 487 at 334 (concluding "there is little doubt that Congress intended [prejudice] to be relevant for a district court's consideration").

**B. Remedy for Speedy Trial Act Violation**

***1. The Seriousness of the Offenses***

modify conditions of release on November 17, 2022, since both motions were ruled upon the same day they were filed. *See* ECF Nos. 114, 115, 116, 117. Lastly, two days may be excluded due to Alexander's motion to modify conditions of release filed on November 1, 2023, since that motion was ruled upon on November 2, 2023. *See* ECF Nos. 122 and 123. These thirty-four total days are the only excludable days from October 1, 2022, to May 21, 2024. Thus, 564 total non-excludable days elapsed over that period.

Turning to the first factor, the seriousness of the offenses,[6] the Court finds that the crimes alleged against the defendants in this case are indeed serious. The primary consideration for this first factor "centers primarily on society's interest in bringing the particular accused to trial." *United States v. Stephenson*, 832 F.3d 412, 419 (3d Cir. 2016) (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)). In other words, how substantial of an insult would it be for the charges in this case to be "dropped once and for all, without a meaningful determination of guilt or innocence." *Id.* In the instant case, Alexander and Francis have both been charged with conspiracy to carjack, carjacking, brandishing a firearm in furtherance of the carjacking, two separate counts of first-degree robbery, and possession of a firearm during the commission of those robberies. (ECF No. 48.) Additionally, Francis has been charged with possession of marijuana with intent to distribute. *See* ECF No. 133. Neither Alexander nor Francis dispute that the charges at issue in this case are serious. *See* ECF No. 128 ("Admittedly, Mr. Alexander is charged with serious felonies."); ECF No. 133 ("Mr. Francis is charged with the same crimes as Mr. Alexander…[and] Mr. Francis adopts all of the arguments, and authorities set forth in Mr. Alexander's motion to dismiss."). Since there is no challenge to the seriousness of the charges in this case, and the Court agrees the charges are indeed serious,[7] the Court concludes the first factor weighs in favor of dismissal without prejudice for both defendants.[8]

---

[6] *See* 18. U.S.C. § 3162(a)(2) (listing the first factor as the seriousness of the offense).

[7] An appropriate measure of the seriousness of an alleged crime is "the punishment prescribed by statute." *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987). Generally, crimes that carry penalties of five years or more are considered serious offenses for the purposes of the Speedy Trial Act. *See, e.g., United States v. Lewis*, 611 F.3d 1172, 1180 (9th Cir. 2010) (holding that crimes that "carried maximum penalties of five years" were serious offenses); *United States v. Salgado–Hernandez*, 790 F.2d 1265, 1268 (5th Cir. 1986) (noting with approval that the Seventh Circuit has held that offenses punishable by imprisonment for five years are serious for the purposes of Speedy Trial Act). Here, conspiracy to carjack carries a maximum penalty of five years, and the substantive offense of carjacking carries a maximum penalty of 15 years. *See* 18 U.S.C. § 371; 18 U.S.C. § 2119. Brandishing a firearm in furtherance of a crime of violence, such as carjacking, carries a mandatory minimum of 7 years. 18 U.S.C. § 924(c)(1)(A). In the Virgin Islands, first-degree robbery carries a maximum of 20 years and possession of a firearm during the commission of a robbery carries a mandatory minimum of 15 years. *See* 14 V.I.C. § 1862; 14. V.I.C. § 2253(a). Given the mandatory minimums and maximums the defendants will be subject to if found guilty of any of the alleged offenses, the Court is satisfied that the crimes alleged in the Indictment constitute serious offenses that weigh in favor of dismissal without prejudice.

[8] In the instant motion, the defendants insist that the seriousness of the offense factor does not operate as a binary weighing for or against the defendants. Rather, the seriousness of the offense must be weighed against

### *2. Facts and Circumstances that Led to the Dismissal in this Case*

The second factor the Court must consider is the facts and circumstances that led to dismissal in this case. *See* 18. U.S.C. § 3162(a)(2). The second factor requires the Court to first consider the length of the delay that caused the dismissal. The Court must then determine whether the delay and ultimate dismissal stems from '"intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process[.]" *Stevenson*, 832 F.3d at 420 (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)). Depending on the nature of the delay and the culpability of the conduct, courts are to give the second factor different weight. *See Hastings*, 847 F.2d at 925; *United States v. Williams*, Crim Act. No. 18-cr-153, 2021 WL 278306, at *7 (M.D. Pa. Jan. 27, 2021). If the delay was motivated by bad faith, willful misconduct, or an attempt to seek a tactical advantage, the delay "weighs heavily in favor of dismissal with prejudice." *Hastings*, 847 F.2d at 925; *see also Stevenson*, 832 F.3d at 420; *United States v. Noble*, 509 F. Supp. 3d 399, 412-13 (W.D. Pa. 2020). More neutral reasons, such as random inadvertent negligence or judicial backlog, also weigh against the Government, but less heavily. *See United States v. Erickson*, Case No. 3:19-cr-0007, 2020 WL 3001047, at * 11 (D.V.I. June 3, 2020). Additionally, to warrant dismissal with prejudice, the sovereign's[9] conduct must be "more than 'an isolated unwitting violation,'" instead, the conduct must represent a "'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect'" or other serious misconduct." *United States v. Wells*, 893 F.2d 535, 539 (2d Cir. 1990) (quoting *Taylor*, 487 U.S. at 338-39); *see also United States v. Bert*, 814 F.3d 70 (2d Cir. 2016) (explaining that while a dismissal

---

the seriousness of the delay along with the other factors in the dismissal of the analysis. While the defendants are correct that the seriousness of the offense must be considered against the other factors, the defendants seemingly seek to have the Court consider all the factors in step one in order to dilute the impact that the alleged crimes have on the Court's dismissal analysis. The Court will, of course, balance the factors against each other, but it must first determine whether each factor favors dismissal with or without prejudice. *See, e.g.*, *Stevenson*, 832 F.3d at 420 ("Stevenson's heroin and firearms offenses are serious crimes for purposes of the Speedy Trial Act. Accordingly, the District Court rightly held that the first factor weighed in favor of dismissal without prejudice."); *see also United States v. Bert*, 814 F.3d 70, 84 (2d Cir. 2016) (noting that on review, "[b]ecause [defendant] concedes that his offense was serious, we need not analyze the district court's findings in this regard.").

[9] When the Court refers to the "sovereign's conduct," it is referring to the conduct of both the Government and the Court itself.

with prejudice does not necessarily require a showing of "evil motive" on the part of the Court or the Government, the delay still must at least be attributable to a '"truly neglectful attitude."') (quoting *Taylor*, 487 U.S. at 338).

Admittedly, the Speedy Trial Act violation and subsequent dismissal in this case rests almost exclusively on the Court's shoulders. The delay in bringing this case to trial was primarily the result of the Court's oversight due to its significant criminal docket and general case backlog rather than bad faith or purposeful neglect on the part of the Court or the Government. Nevertheless, none of the mitigating circumstances excuse the delay that occurred here.

On February 10, 2022, the Court held an evidentiary hearing regarding the motion to suppress. Notwithstanding the Court having received all the requisite supplemental briefing from the parties on March 8, 2022, the Court did not rule on the pending motion until May 28, 2024. Therefore, the motion remained "under advisement" for 812 days. The only intervening motions filed after the hearing were: (1) three motions to modify conditions of release that were granted either the day they were filed or the day after; (2) Alexander's motion for a ruling on September 29, 2023; and (3) the instant motion to dismiss filed on May 21, 2024. (ECF Nos. 114, 116, 120, 122, and 128.) Consequently, once the COVID-19 orders expired on October 1, 2022, the speedy trial clock began to run virtually unabated as a result of the Court's failure to rule on the motion to suppress and schedule this case for trial in a timely fashion. Thus, as a factual matter, the Court, rather than the parties, is responsible for the Speedy Trial Act violation in this case.

Nevertheless, the Speedy Trial Act is just as much "aimed at the delay caused by judicial congestion and mismanagement as it is aimed at the deliberate stalling of counsel." *Noble*, 509 F. Supp. 3d at 413–14. Accordingly, when "scrutinizing the circumstances which gave rise to the speedy trial violation . . . the conduct of the court is included in the equation." *Noble*, 509 F. Supp. 3d at 413–14 (quoting *Hastings*, 847 F.2d at 925). "Where...the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused." *United States v. Green*, 471 F. Supp. 3d 577, 591 (M.D. Pa. 2020) (quoting *Hastings*, 847 F.2d at 925). Therefore, as a matter of law, the Government

ultimately bears the responsibility for the delay and ultimate dismissal of the Indictment in this case.

However, the Government is not simply blamed for the delay by default in this instance. The Government is also responsible for its own inaction in the case. *See United States v. Ramirez*, 973 F.2d 36, 30 (1st Cir. 1992) (noting the need for "prosecutors to be alert to STA calculations in order to aid the court in its enforcement of the STA."); *Bert*, 814 F.3d 70 (2d Cir. 2016) ("Once a motion has been taken under advisement the government may not simply wash its hands of any further involvement…"). Therefore, since the Government never notified the Court of any impending speedy trial deadlines in this case, it must shoulder at least some of the responsibility separate and apart from the Court's own failings.

Alexander and Francis, on the other hand, bear no responsibility for the pretrial delay. Early on in these proceedings, both Alexander and Francis asserted their right to a speedy trial. Francis made a speedy trial demand on July 27, 2020, and Alexander made a demand on August 11, 2020, insisting that the trial proceed as originally scheduled, notwithstanding the deadly COVID-19 pandemic. On August 29, 2023, Alexander also filed a motion specifically requesting that the Court rule on the pending motion to suppress. *See* ECF No. 120. While the motion was still pending, Alexander then proceeded to file the instant motion to dismiss the Indictment for a violation of his speedy trial rights, which Francis subsequently joined.[10]

Given Alexander and Francis' efforts in pursuing their speedy trial rights and the sovereign's failure to bring this case to trial in a timely fashion, the second statutory factor weighs in favor of dismissal with prejudice due to the sheer length of the delay. The only question left to decide then is how much weight this second factor should carry in the overall prejudicial analysis.

---

[10] Although the defendants had no obligation to affirmatively assert their right to a speedy trial in the context of a Speedy Trial Act violation, their actions in this case certainly make the defendants more deserving candidates of a dismissal with prejudice. *See United States v. Criswell*, 360 F. Supp. 3d 694, 708 (S.D. Ohio 2019) ("Defendant 'has no duty to bring himself to trial and has no duty to bring any delay to the court's attention.' However, '[d]efendants who passively wait for the speedy trial clock to run have [a lesser right] to dismissal with prejudice than do defendants who unsuccessfully demand prompt attention.'") (quoting *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000)).

As noted above, the delay in the trial resulting from the Court and the Government's conduct is unquestionably significant. Approximately 564 non-excludable days elapsed without the defendants proceeding to trial. Notwithstanding the substantial delay, the Court believes that the weight of the second factor is weakened considerably by the nature of the delay-causing conduct. There is no evidence of malice, bad faith, or intentional neglect on the part of the Court or the Government in causing the delay in trial. The delay was an unfortunate administrative oversight that led to this case falling through the cracks. Moreover, not only was the delay unintentional, but the conduct at issue also represents a rare instance of the Court losing track of the case deadlines and trial schedule. *See United States v. Graham*, 1:21-CR-195, 2022 WL 2873876 at *7-8 (W.D.N.Y. May 2, 2022) (finding the second factor significantly weakened in large part due to the absence of bad faith or pattern of neglect). In other words, the Court's conduct constitutes a singular "unwitting violation" rather than "a pattern of neglect" indicative of a "truly neglectful attitude" toward criminal defendants and their rights to a speedy trial. *Wells*, 893 F.2d at 539; *see also United States v. Cardona-Rivera*, 64 F.3d 361, 364 (8th Cir. 1995) ("When the delay is not attributable to the government, but to the court, dismissal with prejudice is not favored."); *United States v. Mancuso*, 302 F. Supp 2d 23, 31 (E.D.N.Y. 2004) ("[T]he length of time is not necessarily inconsistent with the initial error being unwitting and isolated in character."). Thus, because of the absence of bad faith, and the rare and limited nature of the violation in this instance, the Court believes the second statutory factor only weighs somewhat in favor of a dismissal with prejudice. *See Stevenson*, 832 F.3d at 421 ("Because its conduct was unintentional, 'penalizing the government [or the court] for the delay would not appreciably deter any similar behavior in the future."') (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 463 (10th Cir. 2006)). However, because of the nature of the delay, this factor does not weigh heavily in favor of a dismissal with prejudice.

***3. Impact of a Reprosecution on the Administration of Justice***

Finally, the Court also must weigh "the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice." *Stevenson*, 832 F.3d 412, 421-22 (3d Cir. 2016). There are two main considerations for the final factor of the

analysis. First, the Court must look to see whether the delay caused either trial or non-trial prejudice to the defendant. *See Stevenson*, 832 F.3d at 422 (noting one of the two "main considerations" is "whether the defendant suffered actual prejudice as a result of the delay"); *see also Bert*, 814 F.3d at 82 (noting that actual non-trial prejudice must be considered as well). Typically, trial prejudice includes considerations related to the defendant's ability to mount a defense at trial, such as the loss of witnesses, the fading of memories, or the destruction of evidence. *See Bert*, 814 F.3d at 82. Non-trial prejudice, on the other hand, includes the length of pretrial detention, the prejudice suffered by living for years under a cloud of suspicion and anxiety, as well as the disruption in employment, drain on financial resources, the subjection to public obloquy, and curtailment of familial and friendly associations. *See Taylor*, 487 U.S. at 340; *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring). Regardless of whether the defendant is relying on trial or non-trial prejudice, the prejudice to the defendant must be particularized. *See United States v. Solnin*, 81 F. Supp. 3d 193, 207 (E.D.N.Y. 2015) ("Indeed, 'prejudice is not generalized harm to a defendant as a result of the speedy trial violation, but rather the effect of that delay on the defendant's trial preparation.'") (quoting *United States v. Barro*, No. 12–CR–0160, 2014 WL 2718410, at *8 (E.D.N.Y. June 16, 2014)).

As for the second prong, the Court must determine whether a "dismissal with prejudice is necessary to ensure future compliance with the Act." *See United States v. Kottmyer*, 961 F.3d 569, 573 (6th Cir. 1992). "[B]oth a dismissal with prejudice and a dismissal without prejudice encourage compliance with the Act;" dismissal with prejudice is just "a more 'powerful incentive.'" *United States v. McLendon*, 944 F.3d 255, 264 (D.C. Cir. 2019) (quoting *Zender*, 547 U.S. at 499). As the Supreme Court has explained, dismissal without prejudice is not a "toothless sanction" but rather is designed to promote compliance with the Speedy Trial Act "without needlessly subverting important criminal prosecutions." *Taylor*, 487 U.S. at 342; *Zender*, 547 U.S. at 499. Thus, the desire for strict compliance and the mere prospect of greater deterrence of future violations are, alone, insufficient bases to warrant a dismissal with prejudice. *See Taylor*, 487 U.S. at 342 ("If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the

consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution."); *United States v. Graham*, 1:21-CR-195, 2022 WL 2873876, at *8 (W.D.N.Y. May 2, 2022). The more drastic remedy of dismissal with prejudice is therefore generally only appropriate where a more severe deterrent is necessary to ameliorate systemic neglect or prevent serious misconduct. *See Stevenson*, 832 F.3d at 422 (noting the third factor counseled against dismissal with prejudice where there was no "misconduct beyond the bare fact of the delay."); *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005) ("Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation."); *United States v. Carreon*, 626 F.2d 528, 533-34 (7th Cir. 1980) (finding no need for dismissal with prejudice where circumstances causing delay were unlikely to recur and there was no bad faith or intentional delay).

Turning first to the prejudice prong, Alexander does not identify any trial prejudice as a result of the Speedy Trial Act violation. Alexander makes no arguments that the delay prejudiced his ability to prepare for trial or that the delay has inhibited his ability to produce evidence or witnesses that might provide favorable testimony. *See Stevenson*, 832 F.3d at 422 (noting there is no prejudice where there is no evidence that defendant's ability to mount a defense was impaired); *United States v. McLendon*, 944 F.3d 255, 266-267 (D.C. Cir. 2019) (noting that hypothetical impairment that may result from prolonged delay is insufficient to make the requisite showing of specific trial prejudice). In fact, in his Trial Brief filed on May 21, 2024, Alexander only listed himself and "all government witnesses" as proposed witnesses. (ECF No. 130.)

Alexander also fails to point to any specific non-trial prejudice either. He was released from pretrial detention on June 21, 2021—well before the speedy trial clock began to run in this case. *See United States v. Lloyd*, 50 F. 4th 648, 559 (7th Cir. 2022) ("[J]ust because a defendant was detained pretrial does not mean the charges must be dismissed with prejudice."). Additionally, Alexander fails to indicate any specific personal prejudicial effect the delay has had on him, let alone a non-trial prejudice that goes beyond what is "inevitable in a criminal case." *See United States v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976) (requiring personal prejudice that is specifically attributable to the pretrial delay as opposed to the

criminal case generally). While it is true that the "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant," mere delay alone is generally not sufficient to warrant dismissal with prejudice where no other factors weigh in the defendant's favor. *Taylor*, 487 U.S. at 340; *see Hastings*, 847 F.2d at 926 ("Neglecting to heed established time limitations and lack of attention in their observation are wrong . . . . But circumstances of this sort, standing alone, do not warrant dismissal with prejudice of serious criminal charges.") (collecting cases concluding that negligence, as opposed to intentional foot-dragging, normally is not sufficient to bar reprosecution); *United States v. Mancuso*, 302 F. Supp. 2d 23, 28 (E.D. N.Y. 2004) (explaining that the sheer length of delay alone "obviously falls far short of being dispositive."). Defendant Francis similarly fails on the prejudice prong because he did not make any prejudice argument particularized to his unique factual circumstances.[11] *See Noble*, 509 F. Supp. at 415 ("Defendant has the burden under the Speedy Trial Act to show specific prejudice.") (citing *Stevenson*, 832 F.3d at 422). Moreover, even if the Court were to allow Francis to adopt Alexander's prejudice arguments, the Court would find an insufficient showing of particularized prejudice for the same reasons outlined with respect to Alexander.

As for the second prong of the third factor, the impact of a reprosecution, the Court believes that although the defendants' right to a speedy trial and the protection of that right is of critical importance, the Court is of the opinion that given the absence of willful conduct or bad faith present here, a dismissal with prejudice would unduly undermine the justice system. As the Eighth Circuit explained in *Cardona-Rivera*, in circumstances where the Court rather than the Government is culpable for the delay, "dismissal with prejudice would do little to deter or advance the administration of the Act." 64 F.3d at 364; *see also Abdush-Shakur*, 465 F.3d at 464 ("Where the delay caused by the government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice."); *United States v. Kottmyer*, 961 F.2d 569, 573 (6th Cir. 1992); *United States v. Archer*, 984 F. Supp. 321, 324 (E.D. Pa. 1997) (quoting

---

[11] Similar to Alexander, Francis does not identify any witnesses he intends to call at trial other than witnesses called by the Government. (ECF No. 134 – Trial Brief of Defendant Jestus Lars Francis.)

*United States v. Long*, 858 F. Supp. 601, 604 (N.D. W. Va. 1994) ('"It certainly is not in the best interest of justice or the public to allow this defendant to avoid prosecution in these circumstances,' where 'there is no evidence that a delay in the indictment gave the government a tactical advantage, that the delay was purposeful, or that the defendant was unfairly prejudiced by the delay."')).

While the Court is cognizant of the fact that Alexander and Francis have already been subject to these charges for a substantial amount of time and will likely remain subject to these charges for a considerable amount of time in the event of reprosecution, the Court reminds the parties that dismissal without prejudice is not a "toothless sanction." *Taylor*, 487 U.S. at 342. Not only is there still a risk of a later dismissal on statute of limitations grounds, but the reality of the matter is that reprosecution can be costly even where the court allows the Government to retry the case. *See United States v. Law*, 526 F. Supp. 2d 513, 521 (E.D. Pa. 2007). Thus, the mere fact that reprosecution is possible even after a significant delay is not enough for the third statutory factor to weigh in favor of either Alexander or Francis in these circumstances. As such, the Court finds that the impact of a reprosecution on the administration of justice weighs in favor of dismissal without prejudice as to both defendants.

***4. Balancing of the Three Speedy Trial Act Factors***

Notwithstanding the inexcusable and significant delays, the Court ultimately concludes that dismissal without prejudice is an appropriate remedy in this case. Although a more than 560-day delay amounts to a serious violation of the defendants' speedy trial rights, Alexander and Francis' charges are serious. Moreover, the delay was not a result of bad faith, but instead an oversight by the Court. Therefore, since there is an absence of prejudice outside of the delay itself, the Court concludes that the weighing of the factors counsels in favor of dismissal without prejudice. *See United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir. 2000) (holding that even where 414 non-excludable days had elapsed, the seriousness of the offense, the Government's lack of responsibility leading to the dismissal, all nevertheless supported dismissal without prejudice); *United States v. Toombs*, 713 F.3d 1273, 1281 (10th Cir. 2013) (dismissal without prejudice even where 350 non-excludable days had elapsed).

**C. Constitutional Speedy Trial Analysis**

Although the statutory violation may not warrant dismissal with prejudice, the defendants argue, in the alternative, that the conduct and resulting pretrial delay constitutes a constitutional speedy trial violation that necessarily warrants dismissal with prejudice.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The right to a speedy trial is 'fundamental,'" and consequently, a violation of the constitutional speedy trial right mandates a dismissal of the indictment with prejudice. *Barker v. Wingo*, 407 U.S. 514, 515 (1972) (quoting *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)); *see also Strunk v. United States*, 412 U.S. 434, 440 (1973) (establishing that dismissal with prejudice is the only remedy for constitutional speedy trial violation);[12] *United States v. Garcia*, 59 F.4th 1059, 1064 (10th Cir. 2023) (same); *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (same); *United States v. Alvin*, 30 F. Supp. 3d 323, 350 (E.D. Pa. 2014) (same) (citing *United States v. Velazquez*, 749 F.3d 161, 167 (3d Cir. 2014)). Although the constitutional speedy trial right is "fundamental," the right is also "'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker*, 407 U.S. at 522) (additional level of quotations omitted). Since the right is "consistent with delays and depend[ent] on circumstances," there is no bright line rule delineating when a defendant's constitutional speedy trial right has been violated. *Id.* (quoting *Barker*, 407 U.S. at 522). Instead, when evaluating an alleged constitutional speedy trial violation, courts must engage in a "flexible" balancing test wherein they must consider the following four factors laid out by the Supreme Court in *Barker v. Wingo*: "[1] length of delay; [2] the reason for the delay; [3] the defendant's assertion of his right; and [4] prejudice to the defendant." *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993); *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 382 (3d Cir. 2022)

---

[12] While the Supreme Court in *Strunk* stated that the only possible remedy for a Sixth Amendment speedy trial violation is "dismissal," *see* 412 U.S. at 440, thereby seemingly leaving open the possibility that dismissal could be without prejudice, the courts have generally rejected the notion that both types of dismissals are available where a constitutional speedy trial violation has occurred. *See United States v. Elmardoudi*, 501 F.3d 935, 943 n.7 (8th Cir. 2007) ("It is generally agreed that [the reference to dismissal in *Strunk*] mean[t] dismissal with prejudice.") (citing *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007)).

(quoting *Barker*, 407 U.S. at 530). "All factors must be considered and weighed as no one factor is dispositive nor 'talismanic"' *Hakeem*, 990 F.2d 759 (quoting *Barker*, 407 U.S. at 533).

***1. Preliminary Inquiry—Length of Delay***

However, an analysis of all four *Barker* factors is not automatic simply because the defendant asserts a constitutional speedy trial violation. To trigger the full *Barker* analysis, there must be a preliminary finding of presumptive prejudicial delay,[13] meaning a delay that approaches one year between the arrest or indictment and the trial. *See United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see also Hakeem*, 990 F.2d at 760 (noting a delay of fourteen months is normally sufficient to warrant inquiry into the remaining *Barker* factors); *see also United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (indicating that in the constitutional context, "delay is measured from the date of arrest or indictment, whichever is earlier, until the start of trial.") (citing *Hakeem*, 990 F.2d at 760).[14] Here, the total delay from the filing of the Information[15] to the previously scheduled June 3, 2024 trial was 1,412 days, or 3 years, 10 months, and 12 days. Undoubtedly, such a period of pretrial delay is sufficient to establish the presumptive prejudicial delay necessary for the Court to conduct the full four-factor *Barker* analysis. *See Hakeem*, 990 F.2d at 760; *Kennedy*, 50 F.4th at 382.[16]

---

[13] The presumptive prejudice discussed in the preliminary inquiry is distinguishable from the presumptive prejudice that excuses a defendant from needing to make a specific showing of prejudice as a part of the fourth *Barker* factor. *See United States v. Moreno*, 789 F.3d 72, 82 n.10 (2d Cir. 2015) (explaining the two different types of presumptive prejudice in the *Barker* analysis); *United States v. Duran-Gomez*, 984 F.3d 366, 374 n.6 (5th Cir. 2020).

[14] Filing of a superseding indictment or any other subsequent charging document will not restart the constitutional speedy trial clock. *See Battis*, 589 F.3d at 679 n.5 (citing *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976)). Accordingly, the constitutional speedy trial clock in the instant case started on July 22, 2020, when the Government filed the Information even though the Government later filed an Indictment on October 22, 2020. (ECF No. 1 and ECF No. 48.)

[15] In the District Court of the Virgin Islands, felony offenses may be prosecuted by indictment or information. Thus, the speedy trial case law tying the start of the speedy trial clock to the indictment is equally applicable to the information charged in this case. *See United States v. Ntreh*, 279 F.3d 255, 257 (3d Cir. 2002); *see also United States v. Marion*, 404 U.S. 307, 320 (1971) (indicating that an arrest, indictment, or information are all potentially sufficient to trigger the start of the constitutional speedy trial clock).

[16] "Here we have no difficulty concluding that the delay in this case—1,520 days, or nearly fifty months, from Kennedy's arrest on August 17, 2009, to the commencement of jury selection on October 15, 2013—was sufficiently long to trigger a *Barker* analysis." *Kennedy*, 50 F.4th at 382.

***2. First Factor—Length of Delay***

Since the Court has determined a full *Barker* analysis is appropriate, the Court must once again consider the length of the delay to determine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652 (citing *Barker*, 407 U.S. at 533-34).[17] When considering this first factor, the court assumes that the longer the delay, the greater likelihood the defendants have been prejudiced by the delay. *Doggett*, 505 U.S. at 652 (noting that the length of delay inquiry "is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time."). If negligent or intentional pretrial delay is "extraordinarily" long, the Court not only weighs the length of delay heavily in favor of the defendant, but the Court will also presume general prejudice notwithstanding the defendant's inability to point to any specific prejudice suffered because of the delay. In other words, once the negligent delay rises to the level of extraordinary, a defendant no longer bears the burden of demonstrating any prejudice at all; the prejudice factor of the *Barker* analysis is simply assumed due to the length of delay. The Third Circuit has determined that general prejudice will be presumed due to extraordinary delay "when there is a forty-five-month delay in bringing a defendant to trial." *Battis*, 589 F.3d at 683.

In the present case, the defendants were charged by information on July 22, 2020, and the case was most recently scheduled to go to trial on June 3, 2024. If the trial on June 3, 2024, had proceeded as scheduled, forty-six months would have elapsed under the constitutional speedy trial clock from the time Alexander and Francis were formally charged to the time they received a trial. While courts sometimes consider the length of the delay in isolation when determining that a delay is extraordinary, thereby weighing the first factor heavily in favor of the defendant, and potentially establishing a general presumption of

[17] As the Third Circuit explained in *Wells v. Petsock*, consideration of the total length of pretrial delay is a necessary component of the Sixth Amendment analysis because the '"speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."' 941 F. 2d 253, 257 (3d Cir. 1991) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986) ( additional level of internal level of citations and quotations omitted)).

prejudice, this case requires a more nuanced approach where the first factor—length of delay, and the second factor—the reason for the delay, must be considered together. *See United States v. Vargas*, 97 F.4th 1277, 1289 (11th 2024) ("where 'the first two factors, length of delay and the reason for it…overlap to an extent' we will 'address them together'") (quoting *United States v. Olivia*, 909 F.3d 1292 (11th Cir. 2018)). When a court finds it appropriate to consider the first two *Barker* factors simultaneously "because there are different forces at work for different parts of the delay," the court should not find that "the length of the delay weigh[s] *heavily* against the Government unless the *reason* for the delay also weighs against the Government." *Id.* at 1289-90 (quoting *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 2693 (2023)); *see also Kennedy*, 50 F4th at 382 ("[I]f defendant establishes that the delay was due to 'negligence over a sufficiently long period,' the burden shifts to the Commonwealth to justify the delay.") (quoting *Velazquez*, 749 F.3d at 179); *Green*, 471 F. Supp. 3d at 596 ("[T]his [first] factor only slightly weighs in favor of Defendant because it is closely entwined with the reason for the delay.").

Similarly, before the Court can find a general presumption of prejudice, thereby alleviating the defendants' burden of establishing the fourth *Barker* factor, the Court must determine whether the majority of the extraordinary delay is fairly attributable to the Government. *See Battis*, 589 F.3d at 682 ("In evaluating whether the period of delay was long enough to trigger this 'presumption of prejudice,' the *Doggett* Court considered both the total length of delay (over eight years) and the portion of that delay attributable to the Government (six years).") (quoting *Doggett*, 505 U.S. at 657-58); *United States v. Duran-Gomez*, 984 F.3d 366, 379 (5th Cir. 2020) ("[D]elay longer than five years g[ives] rise to the presumption of prejudice, when at least five years of the case's total delay is due to the government's negligence or bad faith[.]"); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). If the significant delay purportedly triggering the presumption of prejudice is not a by-product of the Government's negligence or misconduct, general prejudice will not be presumed. *See United States v. Palmer*, 14-cr-652, 2021 WL 3932027, at *13 (S.D. N.Y. Sept. 1, 2021) ("When assessing whether the delay is long enough to allow a defendant to rely

solely on the presumption of prejudice, courts consider only the portion of the total delay attributable to the Government.”).

Therefore, because there are two fundamentally separate causes for the pretrial delay in the instant case, the Court must also consider the second *Barker* factor before determining how much weight to give the length of delay and whether general prejudice is presumed.

***3. Second Barker Factor—Reason for the Delay***

The second *Barker* factor provides important context to the length of delay because the second factor requires the court to identify the reasons for the delay and determine “whether the government or the criminal defendant is more to blame.” *Doggett*, 505 U.S. at 651. This factor is often considered the “focal inquiry” of the constitutional speedy trial analysis. *United States v. Munoz-Amado*, 182 F.3d 57, 62 (1st Cir. 1999) (internal citation and quotations omitted); *see also United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (“The flag all litigants seek to capture is the second factor, the reason for delay.”). When evaluating the various reasons for delay, the Supreme Court has made clear that not all reasons are created equal, and thus, courts should give appropriate weight depending on the culpability of the conduct. *See Barker*, 407 U.S. at 531 (“[D]ifferent weight should be assigned to different reasons.”). “Deliberate delay ‘to hamper the defense’ weighs heavily against the prosecution[,]” while “‘[m]ore neutral reasons such as negligence or overcrowded courts’ weigh less heavily.” *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 531). However, where there is a valid reason, such as a missing witness justifying the delay, that portion of the delay is weighed against the defendant and in favor of the Government. *See United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (“[D]elays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the [Government.]”) (quoting *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008)); *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (“[V]alid reasons for a delay weigh in favor of the government.”) (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006)); *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998).

The total 46-month delay in this case can be neatly divided into two categories. The first period being the delay caused by the COVID-19 global pandemic. From the time the

defendants were formally charged on July 22, 2020, to September 30, 2022, when the Court lifted its standing orders, the federal judiciary, and the District Court of the Virgin Islands, in particular, were facing enormous challenges holding in-person criminal proceedings. Due to the public health risks posed by in-person proceedings, this Court was unable to hold both suppression hearings and criminal trials during this 26-month span. *See United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) (concluding that “a global pandemic that has claimed more than half a million lives in this country…falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health.”). While such a delay cannot be “blamed” on the defendants, the delay may also not be laid at the feet of the Government. As the Third Circuit explained in *United States v. Rodriguez-Mendez*, “delays engendered by the Covid-19 pandemic fits into the category of justifiable delay” and therefore cannot be fairly attributed to the Government. No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023); *see United States v. Pair*, 84 F.4th 577 (4th Cir. 2023) (holding that COVID-19 was a “valid reason for delay.”); *United States v. Snyder*, 71 F.4th 555, 578 (7th Cir. 2023) (“[T]he pandemic-related delays in Snyder's case were justifiable and cannot fairly be attributed to the government.”); *United States v. Marquez*, No. 21-30134, 2022 WL 16849065, at *1 (9th Cir. Nov. 10, 2022) (finding COVID-19 pandemic included in the “valid reasons” for delay under the second factor of the *Barker* analysis). Consequently, since the reason for the first 26-months of the pretrial delay was “valid” this period does not weigh in favor of a speedy trial violation. *See United States v. Allen*, 86 F.4th 295, 305 (6th Cir. 2023) (“[T]he district court delayed the trial because of the COVID-19 pandemic. We and other courts have treated this type of delay as a valid reason that also weighs against the defendants (or at least as a neutral reason that favors neither party).”) (citing among other cases, the Third Circuit decision in *Rodriguez-Mendez*, 2023 WL 3378005, at *3).

The subsequent 20-month delay following the conclusion of the Court’s COVID-19 standing orders, however, may be attributed to the Government. As explained previously, the delay from October 1, 2022, to May 28, 2024, was a direct result of the Court’s crowded docket and ultimate negligence in failing to rule on the pending motion to suppress and

subsequently setting the case for trial in a timely fashion.[18] Indeed, since the Government is responsible for any delay attributable to the Court, and because the Government itself bears at least some responsibility for not diligently moving this case forward, the Government must shoulder the blame for the 20-month delay. *See Burkett v. Fulcomer*, 951 F.2d 1431, 1440 (3d Cir. 1991) (highlighting that the Government is responsible for delay caused by the court when considering reasons for the delay); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979) ("While the government may have had little control over the 'institutional delays' more appropriately attributable to the court, 'the ultimate responsibility for such circumstances must rest with the government rather than the defendant.") (quoting *Barker*, 407 U.S. at 531); *United States v. Perry*, 353 F. Supp. 1235, 1238 (D.D.C. 1973) ("It is likewise true that unnecessary delays in the Trial Court, while not the responsibility of the United States Attorney, as such, are the responsibility of the Government."). Although the Government must assume the blame here, the prejudicial weight attributed to this period is lessened given that the Court's inadvertent negligence is the type of delay-inducing conduct that can be appropriately considered "more neutral" *See Barker*, 407 U.S. at 531.

With the relevant considerations for the length of delay and the reasons for the delay in mind, the Court will now weigh the first two *Barker* factors.

Regarding the length of delay, the fact that 26 months of the overall delay may not be attributable to the Government is critically important in determining the weight of this factor and whether presumptive prejudice attaches as a result. The length of delay should only be given heavy weight where the "extraordinary delay" is primarily the result of the Government's negligence or misconduct. *See Vargas*, 97 F.4th at 1289. For instance, in *United States v. Claxton*, the Third Circuit found that the delay was not extraordinary where there was a three-and-a-half-year delay, but only nineteen months could be attributed to the Government. *See* 766 F.3d 280, 294 (3d Cir. 2014).

---

[18] As previously stated, the Court's negligence in this instance was an inadvertent oversight as opposed to reckless or intentional misconduct.

Here, since only 20 out of the 46-month delay were the result of the Government's negligence, the Court finds that the delay attributable to the Government is not "sufficiently long to 'intensify' any prejudice it allegedly caused." *United States v. Mensah-Yawson*, 489 Fed App'x 606, 611 (3d Cir. 2012). Accordingly, since the majority of the delay was a by-product of circumstances outside of the sovereign's control, the Court will only give slight weight, if any, to the length of delay factor. *See id.* (concluding where there was a fifteen-month delay attributable to the Government, that was not enough for the first factor to weigh in favor of the defendant).

Additionally, the Court does not believe the defendants are entitled to a general presumption of prejudice due to an "extraordinary delay." The courts have made clear that the presumption is only available where the delay creating the presumption is primarily attributable to the Government. Less than half of the total delay in this case may properly weigh against the Government. As such, the Government cannot be said to have caused an extraordinary delay. Moreover, a 20-month delay falls well short of the 45 total months (or the 35 months attributable to the Government) the Third Circuit determined was sufficient to trigger a general presumption of prejudice in *Battis*. *See also Claxton*, 766 F.3d at 296 (concluding that no general presumption of prejudice where there was approximately three-and-a-half year delay but "only nineteen months [we]re attributable to governmental delay") (emphasis added); *Hakeem*, 990 F.2d at 771 (finding no inference of presumed prejudice that flows from a delay of 14 months). Consequently, the Court will not presume general prejudice under the circumstances.

The Court also finds that the second factor, the reason for the delay, ultimately favors the Government in this instance. When considering the reason for the delay, courts "subtract the amount of delay caused by the defendant from the delay caused by the Government." *Battis*, 589 F.3d at 680. Importantly, valid reasons for delay weigh in favor of the Government and against the defendants for the purposes of the Sixth Amendment speedy trial analysis. *See Claxton*, 766 F.3d at 295 (noting "excusable delay is subtracted from the delay attributable to the government."); *United States v. Muhtorov*, 20 F.4th 558, 640 (10th Cir. 2021); *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) ("Valid reasons for

delaying a trial are weighted in favor of the Government."); *Williams*, 2021 WL 278306, at *7 ("[V]alid reasons for delay weigh in favor of the government.") (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006); *Libby v. Divris*, Civ. Act. No. 4:21-CV-40013, 2024 WL 1199948, at *5 (D. Mass. March 20, 2024).

Accordingly, because COVID-19-related delays are valid delays, the COVID-19 delay in this case must be weighed against the defendants. The 26-month COVID-19 delay must, therefore, be subtracted from the 20-month delay attributable to the Government. Since the 26 months weighing against a constitutional violation is more than the 20 months weighing against the Government, the reason for the delay necessarily weighs in favor of the Government.

#### ***4. Third Barker Factor—Defendant's Assertion of His Speedy Trial Right***

Next, the Court must "examine 'whether and how a defendant asserts his speedy-trial right,' including 'the frequency and force' of such assertions[.]" *United States v. Velazquez*, 749 F.3d 161, 181-82 (3d Cir. 2014) (quoting *Barker*, 407 U.S. at 529, 531) (internal citations omitted). The Supreme Court has "rejected the notion that 'the defendant has no responsibility to assert his right."' *Id.* at 182 (quoting *Barker*, 407 U.S. at 528). Instead, the Court has concluded that "[t]he more serious the deprivation, the more likely a defendant is to complain," and therefore, a defendant's assertion of his speedy trial rights "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.

In order for the third *Barker* factor to weigh in favor of dismissal whenever the defendant is represented by counsel, the defendant must demonstrate a "timely and proper" assertion of his right to a speedy trial by identifying "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *Battis*, 589 F.3d at 681 (quoting *Hakeem*, 990 F.2d at 766); *Alvin*, 30 F. Supp. 3d at 347 (quoting *Hakeem*, 990 F.2d at 764). Even if a defendant makes a timely assertion of his speedy trial rights, however, such an assertion will be undermined by other actions of a defendant that reveal an unwillingness or an unreadiness to go to trial. *See Hakeem*, 990 F.2d at 764; *Alvin*, 30 F. Supp. 3d at 347 ("Evidence that the defendant

'vigorously pursued a speedy trial' is afforded more weight, while assertions made while the defendant's other behavior evidences an unreadiness to proceed to trial are assigned minimal weight."); *accord United States v. Loud Hawk*, 474 U.S. 302, 314–15 (1986).

Turning to the facts in this case, although Alexander promptly asserted his speedy trial right as early as August 11, 2020,[19] the sincerity of his assertion is somewhat undermined by the defendant's other conduct in this case. Not only did Alexander file a motion to exclude certain evidence the same day he filed his speedy trial motion, *see* ECF 40, but over three months after the Indictment was filed, Alexander sought an extension of the discovery deadline in order to file a motion to suppress and request an evidentiary hearing. In the motion for extension, defense counsel highlighted the challenges created by COVID-19, which substantially hampered his ability to communicate with Alexander and file the appropriate pre-trial motions in a timely manner. The lack of urgency in filing the motion to suppress in combination with the desire to hold an evidentiary hearing demonstrate, to some extent, Alexander's acquiescence to the delay thereby limiting the strength of Alexander's initial assertion of his right to a speedy trial.

Nevertheless, while Alexander's initial claim may not have been particularly compelling, Alexander strengthened the assertion of his speedy trial right by filing a motion for the Court to reconsider his detention status and eventually filing a motion seeking a ruling on his motion to suppress. *See Maples v. Stegall*, 427 F.3d 1020, 1030 (6th Cir. 2005) (concluding "a request for bail as an assertion of a speedy trial right"). Thus, by the time Alexander had filed the instant motion to dismiss based on a violation of his speedy trial right, he had already made three prior assertions of the right over the course of the proceedings. Given Alexander's prompt and repeated assertion of his speedy trial right, the third *Barker* factor clearly weighs in favor of a constitutional violation as to Alexander. *See United States v. Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010) (weighing third *Barker* factor in defendant's favor where defendant assertion of his speedy trial right was both prompt and repeated).

---

[19] The formal charges in this case were filed on July 22, 2020. (ECF No. 1.) Alexander filed a motion asserting his right to a speedy trial less than three weeks later. (ECF No. 41.)

The Third factor is less compelling when it comes to Francis. Indeed, Francis asserted his right to a speedy trial on July 27, 2020, and moved for pretrial release a short time later; however, unlike Alexander, he did not request a ruling on the pretrial motion and rather than filing his own speedy trial motion, he simply filed a notice indicating that he was joining Alexander's arguments in toto.[20] While Francis' conduct is arguably enough for this third factor to ultimately weigh in his favor, Francis' assertion of his speedy trial was not "vigorous," and, therefore, is certainly less compelling than Alexander's.

### *5. Fourth Barker Factor—Prejudice Suffered by the Defendant*

With the first three factors considered, the Court must now consider the fourth and final factor—prejudice to the defendants resulting from the delay. The burden is generally on a defendant to show actual prejudice unless the defendant can make a showing of a general presumption of prejudice due to extraordinary delay. *See Hakeem*, 990 F.2d at 760; *United States v. Gordon*, 93 F.4th 294, 309 (5th Cir. 2024). There are three kinds of potential actual prejudice that are relevant to the Sixth Amendment analysis: (1) the impairment of a defense resulting from either the loss of physical evidence or witnesses, (2) oppressive pretrial incarceration, and (3) the anxiety and concern of the accused. *See Barker*, 407 U.S. at 532; *Wells v Petsock*, 941 F.2d 253, 258 (3d Cir. 1991). Again, both Alexander and Francis fail to show any form of actual prejudice. They point to no specific harm they suffered that stems from the delay. There is no indication that they lost physical evidence or that witness memory has faded or been lost altogether.[21] Additionally, they do not argue that their pretrial incarceration was unduly burdensome[22] nor do the defendants attempt to

---

[20] As mentioned above, Francis filed a separate motion to dismiss based on speedy trial grounds on June 28, 2024, after the trial date of June 3, 2024, and after the Alexander's motion was fully briefed.

[21] As noted above, neither defendant intended to call any witnesses other than themselves or witnesses called by the Government.

[22] In any event, the argument that Alexander or Francis' pretrial detention was "oppressive" would likely fail. Francis was almost immediately granted pretrial release, and Alexander was only in pretrial detention for less than a year. *See* ECF Nos. 30 and 83. As the Third Circuit concluded in *Hakeem*, "fourteen-and one-half months is not "*per se*' oppressive." *United States v. Hawari-Rasulullah*, 3:21-CR-66, 2022 WL 17340627, at *12 (M.D. Pa. Nov. 30, 2022). Thus, by failing to provide "proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment," the defendants cannot demonstrate prejudice based on any pretrial detention. *Hakeem*, 990 F.2d at 761.

demonstrate that they suffered any particularized anxiety and concern exacerbated by the delay. In other words, the defendants failed to make the requisite showing of specific actual prejudice. *See Battis*, 589 F.3d at 682 (noting that defendant must provide affirmative proof of particularized prejudice in order to make a showing of specific prejudice).[23]

Instead of trying to show specific prejudice, the defendants rely exclusively on the sheer length of the overall delay in hopes that delay alone would lead the Court to presume general prejudice. But as the Court has already stated, there can be no general presumption of prejudice in this case because the Government was not responsible for the majority of the delay, and the portion of the delay the Government was responsible for is insufficient to trigger a presumption of general prejudice under the fourth *Barker* factor. *See Claxton*, 766 F.3d at 296 (concluding that no general presumption of prejudice where there was approximately three-and-a-half year delay but "only *nineteen months* [we]re attributable to governmental delay") (emphasis added); *Hakeem*, 990 F.2d at 771 (finding no inference of presumed prejudice that flows from a delay of 14 months); *Battis*, 589 F.3d at 683 (finding that a 45-month delay, where 35 months—an overwhelming majority of the delay—was attributable to the Government was sufficient to trigger the general presumption of prejudice); Consequently, since there is no presumption of prejudice and the defendants have made absolutely no showing of actual prejudice, the Court concludes that the prejudice factor weighs strongly in favor of the Government.

***6. Balancing of the Four Barker Factors***

With the four *Barker* factors considered, the Court must conduct a final balancing of all the factors to determine if either Alexander or Francis' constitutional speedy trial right has been violated. After thorough review and consideration of the record and the relevant case law, the Court does not believe that the defendants' Sixth Amendment right to a speedy trial has been violated at this juncture. While the overall length of delay and the defendants' assertion of their speedy trial right favor a constitutional violation to varying degrees, the two most important factors, reason for the delay and prejudice, ultimately weigh against a

---

[23] Affirmative proof of specific prejudice is unnecessary only when there is a general presumption of prejudice. *See Battis*, 589 F.3d at 682-83.

constitutional violation. *See Wells,* 941 F.2d at 258 (describing the prejudice factor as the "most critical *Barker* factor"); *Loud Hawk*, 474 U.S. 315 (explaining the second *Barker* factor as one of the key factors litigants seek to obtain). Where most of the delay was out of the Court and the Government's control, and there being no showing that the defendants suffered any prejudice from the delay, the Court believes there is not a sufficient basis to find a constitutional violation and thereby require a dismissal with prejudice in this case.

## III. CONCLUSION

For the reasons stated above, the Court will grant the defendants' motion to dismiss the Indictment in this case based on the violation of the Speedy Trial Act, but the Court will exercise its sound discretion and dismiss the Indictment without prejudice.

Furthermore, while the Court finds a Speedy Trial Act violation occurred, the Court does not believe that either Alexander or Francis' Sixth Amendment right to a speedy trial has been violated. As such, the Court will deny the defendants' request to the dismiss the Indictment with prejudice on constitutional grounds. An accompanying order of even date will follow.

**Dated:** July 2, 2024

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**